IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,

               Plaintiff,

     vs.

HANNIE EUGENE RICE,

               Defendant.

**8:23–CR–188**

**MEMORANDUM AND ORDER ON OBJECTIONS TO FINDINGS AND RECOMMENDATIONS ON MOTION TO SUPPRESS**

The Government has charged defendant Hannie Eugene Rice with possession with intent to distribute methamphetamine. Filing 1. This charge stems from a search of the defendant's residence at 214 North Thomas Avenue, Oakland, Nebraska, conducted by law enforcement pursuant to a search warrant on May 6, 2023. During the search, law enforcement uncovered methamphetamine. The defendant filed a Motion to Suppress, Filing 21, that the United States Magistrate Judge recommended be denied, Filing 51. Presently before the Court are the defendant's objections to the magistrate judge's Findings and Recommendation. Filing 52. The defendant contends that suppression is appropriate because the search warrant was insufficiently particularized. Filing 53. Specifically, the defendant argues that the warrant failed to adequately identify the defendant's apartment within the building at 214 North Thomas Avenue. Filing 53. For the reasons stated below, after reviewing the matters *de novo*, the defendant's objections are overruled, the magistrate judge's Findings and Recommendation are accepted, and the Motion to Suppress is denied.

1

# I. BACKGROUND

## A. Factual Background

The magistrate judge's Findings and Recommendation discusses the facts pertinent to the defendant's Motion in greater detail. *See* Filing 52 at 1–8. The following background information provides context for the Court's ruling on the defendant's objections.[1] Deputy Joshua Townsend, the Burt County Sheriff's Department officer who was the lead investigator into the case against the defendant, testified at the Motion to Suppress hearing. Filing 46 at 8. Deputy Townsend learned from informants that the defendant was involved in distributing methamphetamine. Filing 46 at 8. Deputy Townsend further learned that the defendant obtained methamphetamine from California via mailed packages to the residence at 214 North Thomas Avenue, Oakland, Nebraska. Filing 46 at 9.

Deputy Townsend investigated the building at 214 North Thomas Avenue and described it as containing two stories, a basement, and three entrances. Filing 46 at 10. Deputy Townsend stated that he believed the building to be a single-family house. Filing 46 at 10. To verify this belief prior to seeking the search warrant, Deputy Townsend contacted the City of Oakland, Nebraska, which notified him that the property only generated one electric bill and one water bill, and the police department, which provided him with a landlord form indicating that the property was a single-family house. Filing 46 at 10–16. Deputy Townsend also checked the defendant's DMV record, which listed the defendant's address as simply "214 North Thomas Avenue." Filing 46 at 16. This was the same address provided to the DMV by all residents of the house, as none of

---

[1] The Court has reviewed the exhibits presented at the Motion to Suppress hearing conducted by the magistrate judge and the transcript of that hearing. Filing 46. The magistrate judge accurately recounted the evidence adduced at the hearing in the Findings and Recommendation.

the residents specified an apartment number within the building. Filing 46 at 16–17. In addition, Deputy Townsend pulled the county assessor's record of the property, which indicated that the building was classified as a single-family house. Filing 46 at 19. Finally, it was also known to Deputy Townsend at the time he applied for the search warrant that the defendant was related to the other individuals living in the building. Filing 46 at 20.

Mr. Dale Jones, the owner of the residence at 214 North Thomas Avenue, also testified at the hearing to provide more information about the building. Filing 46 at 55. Mr. Jones described the property as "a large five-bedroom house upstairs" and a "basement apartment [with] one bedroom [and] a full kitchen." Filing 46 at 57. Mr. Jones explained that "the top part is rented separate from the . . . basement part. It's two separate places." Filing 46 at 57. Mr. Jones stated that the units are separated by "a door and a stairway that can go down in the basement" and that the door "locks on both sides," meaning the occupants of either unit can elect to lock the door. Filing 46 at 57. In May 2023, the defendant had a lease with Mr. Jones for the basement apartment, and there was a separate lease pertaining to the top unit. Filing 46 at 60. Moreover, the property has two mailboxes—one for each unit—but there are no "markings on the exterior of the building designating separate apartments." Filing 46 at 65. Further, about a decade ago, Mr. Jones converted what was an unfinished basement into the basement apartment, but he has not "submitted anything to any public agency that [the property] is more than a single-family home." Filing 46 at 66.

On May 5, 2023, upon belief that the property was being used to distribute methamphetamine,[2] Deputy Townsend applied for and received a search warrant for "214 N Thomas Ave, Oakland, Nebraska, 68045 LEGAL ADDRESS: L7 & 8 BLK7 OAKLAND, out

---

[2] The defendant nowhere contends that there was no probable cause for the search. The defendant only contends that the warrant was invalid due to its lack of particularization. Filing 53.

buildings, vehicles associated with the property, [and] any persons found on the property or that arrive at the property" to search for "controlled substances as listed in Neb Rev. 28-405 (Reissue 1995), drug money, drug paraphernalia, homemade or otherwise; packaging material and containers used to store, distribute, and conceal controlled substances; notes, receipts, records, documents, ledgers of drug transactions and documents of venue; electronic devices and/or documentary evidence, electronic or otherwise, used to maintain records of drug transactions and concealment of controlled substances." Filing 42-1 (Exhibit 1).

On May 6, 2023, Deputy Townsend and other officers executed the search warrant at 214 North Thomas Avenue. Filing 46 at 21. Deputy Townsend entered the building through the front door, and other officers entered through the other two exterior doors. Filing 46 at 21. Deputy Townsend proceeded through the main level and entered the basement, where he found and arrested the defendant. Filing 46 at 22. At no point did Deputy Townsend have to open any doors to enter the basement from the main level of the house. Filing 46 at 22. Various items of contraband including methamphetamine were found in both the main level and the basement of the house. Filing 46 at 23–24. Law enforcement also recovered mail addressed to the defendant "at 214 North Thomas Avenue" without specifying any particular apartment within the building at that address. Filing 46 at 24.

### B.  Procedural Background

The defendant was indicted on August 22, 2023, for possession with intent to distribute methamphetamine. Filing 1. The defendant filed a Motion to Suppress on November 29, 2023. Filing 21. The magistrate judge held a suppression hearing on May 9, 2024, Filing 41 (Text Order), and issued a Findings and Recommendation that the motion be denied on July 31, 2024, Filing 92. The defendant filed an objection on August 13, 2024, Filing 52, to which the Government

4

responded on August 27, 2024, Filing 54. The defendant objects to the magistrate judge's finding "that the search warrant was not invalid for failing to specify a specific living unit within the residence at 214 North Thomas Avenue." Filing 52 at 1 (¶ 2). The defendant further objects, presumably as an alternative argument, that "[o]fficers knew or should have known upon their entrance onto 214 North Thomas Avenue, that it consisted of a multi-unit dwelling. Officers were required to discontinue their search and seek a more particularized warrant." Filing 52 at 1 (¶ 3).

## II.  ANALYSIS

### A.  Applicable Standards

Under the Federal Rules of Criminal Procedure, the Court "must consider de novo any objections to the magistrate judge's recommendation." Fed. R. Crim. P. 59(b)(3). When a party objects to a magistrate judge's proposed findings and recommendations, "[a] judge of the court shall make a de novo determination of those portions . . . to which objection is made." 28 U.S.C. § 636(b)(1); *accord Gonzales-Perez v. Harper*, 241 F.3d 633, 636 (8th Cir. 2001) ("When a party timely objects to a magistrate judge's report and recommendation, the district court is required to make a de novo review of the record related to the objections[.]"). The reviewing district court judge is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). If desired, a reviewing district court judge may "receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.* Moreover, a party's failure to object in accordance with Rule 59 "waives a party's right to review." Fed. R. Crim. P. 59(b)(2); *United States v. Merrett*, 9 F.4th 713, 716 (8th Cir. 2021) (noting that the defendant "did not object to the magistrate judge's order denying his motion, and his failure to object waives his right to review under Federal Rule of Criminal Procedure 59(a)"), *cert. denied*, 142 S. Ct. 815 (2022); *see also United States v. Chen*, No. CR 21-250 (JRT/TNL),

2023 WL 1466503, at *3 (D. Minn. Feb. 2, 2023) (quoting *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1017 (D. Minn. 2015)).

Under *de novo* review, a reviewing court "makes its own determinations of disputed issues and does not decide whether the magistrate[ ] [judge's] proposed findings are clearly erroneous." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). *De novo* review is non-deferential and requires an independent review of the entire matter. *See Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991) ("When de novo review is compelled, no form of appellate deference is acceptable."); *United States v. Backer*, 362 F.3d 504, 508 (8th Cir. 2004) ("'De novo' is a Latin term literally meaning 'as new.' Our review is independent and not premised on the district court's appropriate use of its discretion. We are concerned only with the proper application of the law . . . ."). When a party contests a magistrate judge's findings that resulted from an evidentiary hearing, the reviewing district court judge does not need to conduct another hearing. *See United States v. Raddatz*, 447 U.S. 667, 674 (1980) (holding that 28 U.S.C. § 636 "calls for a de novo determination, not a de novo hearing"). Instead, the district court discharges its duty by, at a minimum, listening to a tape recording or reading a transcript of the evidentiary hearing. *See United States v. Azure*, 539 F.3d 904, 910–11 (8th Cir. 2008). Here, the Court has read the transcript of the suppression hearing and has reviewed the exhibits admitted at the hearing.

### B.  The Search Warrant Was Sufficiently Particularized

#### 1.  *The Magistrate Judge's Findings and the Parties' Arguments*

The magistrate judge concluded that the search warrant in this case was sufficiently particularized. Filing 51 at 9. The magistrate judge found that none of the information reasonably available to Deputy Townsend at the time he prepared the warrant application and affidavit suggested that the building at 214 North Thomas Avenue was anything besides a single-family

house. Filing 51 at 9. This evidence included county assessor records, utility bills, and the landlord ordinance form. Filing 51 at 9. All this material was public record and indicated that the building at 214 North Thomas Avenue was a single-family house. Filing 51 at 9. Moreover, Deputy Townsend's investigation yielded additional evidence suggesting that 214 North Thomas Avenue was a single-family residence and not subdivided into separate units. For instance, Deputy Townsend discovered that all the individuals residing in the building were related to each other. Filing 46 at 20. The magistrate judge found that "[t]he fact that the residents of the house were related to one another [ ] tends to make it more likely that they treated the house as a single family home rather than a multi-unit residence," supporting the adequate particularization of the warrant application. Filing 51 at 10. Other indicia that the building was a single-family house included the lack of exterior markings indicating multiple apartments and the fact that the house was built as a single-family residence. Filing 51 at 10. The magistrate judge further found that the lack of an apartment number on the defendant's mail further corroborated "the reasonableness of Deputy Townsend's earlier belief it was a single family home, even had he taken note of the two mailboxes." Filing 51 at 10 n.5. Considered altogether, "[n]othing in Deputy Townsend's investigation or the character of the home provided him reason to believe that it was separated into distinct, private units, or that its occupants did not have access to the whole building." Filing 51 at 10.

The magistrate judge also addressed the defendant's objection that law enforcement should have ceased the search after entering the house because it should have become apparent that there were two separate living units. Filing 51 at 11–15. As an initial matter, the magistrate judge was "not entirely convinced that officers reasonably should have realized the residence was converted into a multi-unit building upon their entry." Filing 51 at 12. However, even if the officers should

7

have come to this realization, the magistrate judge would have nevertheless denied the motion to suppress because probable cause existed to search the basement residence. Filing 51 at 12–13. The magistrate judge reasoned that controlling caselaw only requires law enforcement to cease searching any unit for which they lack probable cause upon discovering the existence of multiple residences. Filing 51 at 11. Because the search was supported by probable cause—which the defendant does not dispute—the magistrate judge concluded that law enforcement properly continued the search, even if they should have recognized the existence of multiple separate residences in the building after the search began. Filing 51 at 11–12.

In his objection, the defendant states that "the search warrant was [ ] invalid for failing to specify a specific living unit within the residence at 214 North Thomas Avenue." Filing 52 at 1 (¶ 2). The defendant explains that this specification was required because "officers would have become aware of the existence of separate living spaces before entering the homes." Filing 53 at 2. The defendant reasons that "each living space had a separate mailbox" and Deputy Townsend "was receiving information from an occupant of the upper-household capable of explaining the living arrangements and accessibility within." Filing 53 at 2. Under these circumstances, the defendant argues that "officers would have been aware of the potential separate living spaces well before breaching the home's interior." Filing 53 at 2. The defendant further objects to the conclusion that the officers were not required to cease searching if they realized the building was comprised of two separate residences. Filing 52 at 1 (¶ 3).

2. *Applicable Standards*

The Fourth Amendment provides that "no Warrants shall issue ... [unless] particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "The particularity requirement is a standard of practical accuracy rather than a hypertechnical

8

one." *United States v. Maccani*, 49 F.4th 1126, 1131 (8th Cir. 2022). In determining whether a warrant is sufficiently particularized, the Court must consider "the purpose for which the warrant was issued, the nature of the items to which it is directed, and the total circumstances surrounding the case." *United States v. Fiorito*, 640 F.3d 338, 346 (8th Cir. 2011) (citations omitted).

The Eighth Circuit has considered cases where "what once was a single-family home [has been] converted to contain separate living units." *United States v. Schave*, 55 F.4th 671, 676 (8th Cir. 2022). In such a case, there must be "a sufficient nexus between the [contraband] and the [ ] residence," otherwise the warrant fails the particularity requirement. *Id.* Courts must consider "the nature of the crime and the reasonable, logical likelihood of finding useful evidence." *United States v. Smith*, 21 F.4th 510, 515 (8th Cir. 2021) "The question is whether there was a reasonable probability that evidence of [contraband] would be found [ ] inside the house." *United States v. Green*, 954 F.3d 1119, 1123 (8th Cir. 2020) (ellipses omitted). In *Schave*, the court upheld a warrant that "did not limit the search to" the defendant's room where there were multiple residences in a converted single-family home. 55 F.4th at 676. Instead , there was "sufficient nexus between the evidence to be seized and the place to be searched" because the contraband was associated with "the address that was searched." *Id.*

   *3. Application*

The present case is analogous to *Schave*, 55 F.4th at 676. The defendant was using the postal service to systematically obtain large quantities of methamphetamine. This contraband was shipped to 214 North Thomas Avenue and not to any specific apartment within the converted single-family home at that address. There was more than "a reasonable probability that evidence of [contraband] would be found . . . inside the house" because all of the information reasonably available to Deputy Townsend at the time of the warrant application indicated a single residence,

and there were numerous sources of evidence that the defendant was distributing narcotics from the residence. *Schave*, 55 F.4th at 676. The occupants of the other unit at 214 North Thomas Avenue were family members of the defendant. There were no external indicators of separate apartments, and the only internal indicator was a basement door that could have been locked from either side. Filing 46 at 57. The building was originally a single-family house, and although converted into two units about a decade ago, no municipal agency was ever informed of the conversion. Filing 46 at 66. Indeed, the building was still comprised of only one mailing address and only received one set of utility bills. Filing 46 at 10–16. "Considering these circumstances, [the Court] conclude[s] there was a sufficient nexus between the evidence to be seized and the place to be searched." *Schave*, 55 F.4th at 676. This conclusion is corroborated by the fact that law enforcement recovered contraband in both units within 214 North Thomas Avenue, and by the fact that the defendant—the subject of the investigation—claimed ownership over all the contraband in the building.

The defendant's other arguments contradict the Eighth Circuit's admonishment that "[t]he particularity requirement is a standard of practical accuracy rather than a hypertechnical one." *Maccani*, 49 F.4th at 1131. Deputy Townsend's investigation into 214 North Thomas Avenue was conducted with "practical accuracy." *Id.* He inspected the building from the street on numerous occasions, pulled county assessment records and utility bills, and determined from DMV records that the buildings' residents were related. Filing 46 at 10–16. Conversely, the defendant makes several arguments that law enforcement should have realized there were multiple residences: there were two mailboxes attached to the building; the basement door can lock from both sides; and Deputy Townsend had previously spoken with one of the residents of 214 North Thomas Avenue and could have inquired further about the structure of the building. Filing 53 at 2.

The defendant advocates for "hypertechnical" particularity—something the Fourth Amendment's Warrant Clause does not mandate. *Maccani*, 49 F.4th at 1131. The mailboxes at 214 North Thomas Avenue did not have markings that would indicate separate units within the apartment. The basement door's ability to lock from both sides is of little probative value, especially considering that there is no evidence that law enforcement knew this fact before or during execution of the search warrant. Filing 46 at 22 (Deputy Townsend indicating that the door was left open upon his entry into the building). Deputy Townsend had no reason to further inquire about the whether the building was subdivided into units because all the publicly available information indicated that 214 North Thomas Avenue was as it appeared: a single-family house. The fact that the building owner renovated the basement to add an apartment without ever informing the municipal authorities does not invalidate the search warrant in this case. Accordingly, because the warrant was the result of Deputy Townsend's "practical investigation" into the status of the building at 214 North Thomas Avenue, the warrant was sufficiently particularized and therefore valid.

## CONCLUSION

For these reasons, and upon *de novo* review, the Court agrees with the findings and recommendation reached by the magistrate judge that suppression is not appropriate in this case. The search warrant was sufficiently particularized and supported by probable cause. Accordingly,

IT IS ORDERED:

1. Defendant Hannie Eugene Rice's Objections to the Findings and Recommendation, Filing 52, are overruled;

2. The United States Magistrate Judge's Findings and Recommendation, Filing 51, is accepted; and

11

3. Defendant Hannie Eugene Rice's Motion to Suppress, Filing 21, is denied.

Dated this 18th day of September, 2024.

BY THE COURT:

Brian C. Buescher
United States District Judge